May it please the Court, Joshua Stone from Quinn Emanuel Urquhart Oliver & Hedges for the petitioner Ronald Foster. I would like to reserve two minutes for rebuttal. In this case, the District Court barred prisoner Ronald Foster from using a Section 1983 action to challenge the conditions of his confinement. The District Court also ruled that Foster could not make out a due process violation from the confiscation of his appliances because California law provided a post-deprivation remedy. Both these rulings were erroneous and this Court should reverse. With respect to his conditions of his confinement, Foster seeks damages from the wrongful revocation of his single-cell status and an injunction to restore that single-cell status going forward. The District Court held that both these claims were barred by Edwards v. Balasag since Foster was punished with a loss of good time credits for refusing to accept a cell partner and Balasag holds that prisoners may not use 1983 to win relief that would necessarily imply the invalidity of a loss of good time credits. They have to use habeas. You've read the cases. You understand that. What's that? They have to use habeas, not 1983. That's what Balasag said, that habeas is the – Isn't this a classic Balasag case in the sense that it would necessarily imply the invalidity of his loss of good time credits? It's not, Your Honor, for two reasons. First, Foster is seeking an injunction restoring his single-cell status going forward. Well, let's talk about the other part. He's seeking damages, too, isn't he? He is seeking damages as well. So isn't that part clearly out under Balasag? It's not, Your Honor, and for this reason, extending Balasag to bar a prisoner from challenging an unconstitutional order simply because somewhere down the road he was punished with a loss of good time credits – But he can do it in habeas. Well, that's correct. It's not barring anybody. It's simply telling somebody there's another way that you have to do it. You can't do it in a 1983. Well, as Your Honor is aware, there are many substantive and procedural obstacles in habeas that do not apply to 1983, and – But it's not barred. I mean, there it is, habeas. Well, it's barring him through 1983, and – Of course it is. That's what Balasag and Heck and all the rest of the cases did. They said you're in the wrong part of the code. Correct. And Balasag and Heck do not – would not lead to the – do not lead to the perverse results that would – that would result here if his 1983 action was barred. Consider, under the district courts and defense interpretation of Balasag, prison officials would theoretically be able to short circuit a 1983 suit, say, one day before judgment. If a prisoner refused an unconstitutional order, brought a 1983 suit, and started winning – You know, I don't mean this is an insult, but that's a law school kind of an answer. I mean, you give us a kind of a – the professor says, well, let's take it down to ten seconds before such and such happens, and we do this. That's not what this case is all about. This case is about the guy's good time credits, and you're coming in under 1983, and you're barred by Balasag. Well, defendants – Because it would necessarily imply the invalidity of that. That's a classic habeas problem. But defendants – defendants do not dispute that you – that it could lead to the perverse results where the prison officials could short circuit a 1983 suit, say, a day before judgment, a week before judgment. And tellingly, defendants do not cite a single case in which a prisoner's 1983 suit – You can argue this case instead of some hypothetical case that's not this case. But adopting the district court's interpretation of Balasag in this case, extending Balasag this far, would open the door to just these perverse results. It would put prisoners in a Hobson's choice of either submitting to an unconstitutional order and forfeiting their constitutional rights. You're manufacturing a parade of horribles that I've never seen in my entire life involving the criminal justice system, state or federal. But defendants don't dispute – If you ever get a case like that where there's some obvious attempt to do something unconstitutional that violates the statute in order to deprive somebody of his or her access to court, that's a totally different case. But applying Balasag to Foster's case would expressly allow for that sort of situation. Foster was put in that same dilemma. He was put in the situation where he could either submit – May I ask you a question? Yes, Judge Bailiff. See if I got the facts right. Foster refused to accept a cellmate. Correct. He has remained single-celled. Correct, and been punished repeatedly. He's lost his good time credits so far. Yes. If he brings a habeas case and establishes the good time credits should be reestablished, what is his loss? If he – under Balasag, if he restores the good time credits through habeas, then he can proceed to 1983. That is what Balasag says. So what's his – what are his damages at that point? He's never been double-celled? Well, he was – he was – he suffered a number of administrative punishments for refusing to accept a cellmate. Name one. He lost – he lost telephone privileges. He lost mailing privileges. There were a number of ancillary issues with respect to his conditions of his confinement. And so there certainly is a claim for damages even above and beyond his loss of the time credits. And respectfully, if I can move to the injunctive portion of his claim, Balasag expressly acknowledged that prisoners' claims for an injunction generally may proceed under 1983, even when their damages claims are barred. And in this case, an injunction restoring Foster's single-cell status in the – going forward would, as a matter of law and logic, simply mean that it is unconstitutional to put him on double-cell status going forward. As the Supreme Court has held, injunctive relief looks to the future. Injunctive relief can be utilized even without a showing of past wrongs. So he's not trying to get his good time credits back? He is – no. This case, he is not seeking a restoration of his time credits. So that's out there. And he spends how much more time in jail as a result, in prison as a result? There's a little bit of conflict in the record. Foster averves that the revocation of good time credits added 390 days to his sentence. Right. But, I mean, that being said, certainly the – as far as the – as far as his injunctive claims, he requests an injunction restoring the single-cell status. Ballisock expressly carved out injunctive relief. But doesn't – I mean, he's seeking an injunction for what he already has. He has single-cell status by simply refusing a cellmate. No, he does not have single-cell status. In other words, he is being continually punished. What is the irreparable damage which an injunction would seek to repair in the future if he is in single-cell status now? You want a little piece of paper saying he is now officially in single-cell status. Because if he was duly on single-cell status according to the prison regulations, he would not have his telephone privileges revoked. He would not have his mailing privileges revoked. He would not have all the ongoing punishments he's currently being subject to. Well, the ongoing punishment is telephone privileges, mail privileges, everything else. Is his diet changed at all? There's nothing to reflect his diet in this case. But there are telephone privileges, mailing privileges, certainly the ongoing – I believe the term is CC status, where he can refuse to – he's barred from earning good time credit going forward in addition to the good time credit revoked in the past. There are a number of administrative punishments. Does that have to do with good time credits, the CC status? I believe one of the – in fact, one of the aspects of CC status is an inability to earn good time credits going forward. Your Honor, if I may, I would like to move to the second claim, the claim that his appliances were confiscated without due process. Now, the district court held that this could not work a due process violation because the confiscation was, quote, unauthorized, unquote, under Hudson v. Palmer and California law provided a post-deprivation remedy. Respectfully, this rests on a fundamental misinterpretation of Hudson. It is undisputed that Defendants Davey and St. Andre confiscated his appliances under the apparent authority of Operational Procedure 606, a written high desert prison regulation. It makes no sense to say that Davey's and St. Andre's actions were, quote, random and unauthorized within the meaning of Hudson when they acted pursuant to an established prison procedure. Indeed, as this Court said in Piatt v. McDougall, quote, where the State has procedures, regulations or statutes designed to control the actions of State officials and those officials charged with carrying out State policy act under the apparent authority of those directives, it makes no sense to say their conduct was random. Why can't he just file under section 900 of the government code like anybody can file against a government entity in California? The existence of a post-deprivation remedy under Hudson is simply irrelevant to the due process violation. And the fact that he could use State law avenue does not mean that his Federal due process challenge fails. Indeed, there are at least two reasons, and I realize I'm running short on time, but there are at least two reasons why the confiscation of his appliances did violate due process. First, it is undisputed he was never provided with a pre-deprivation hearing. And as the Supreme Court held in Zinerman v. Birch, where it is feasible for a State to provide a pre-deprivation hearing, it generally must do so regardless of the adequacy of a post-deprivation remedy. Here, defendants do not dispute that the State, the prison could easily have provided a pre-deprivation hearing. Accordingly, it had to. Second, Your Honor, I would like to reserve the remainder of my time for rebuttal. Thank you. We'll give you a minute for rebuttal. May it please the Court. Constance Picciano with California Attorney General's Office for the Defendants in this matter. Ms. Picciano, would you kindly address the second position taken by Mr. Sohn, which is precisely why forward-looking remedies available under injunctive relief are not available to Mr. Foster? Well, I think that Heck v. Humphrey makes the issue quite clear, and it is not inconsistent with the holding in Balasag, which is you have to look at all times to what Mr. Foster would necessarily have to prove in order to win his civil rights lawsuit. So if he wins a current injunction placing him on single-cell status, it greatly implies that the action that was taken in 2003 was, in fact, an illegal one. He has to prove exactly the same thing, which is that his safety is endangered and it's deliberate indifference to not single-cell him. Couldn't he prove that he is in danger now? And wouldn't that be sufficient to give him an injunction going forward, even though he couldn't prove that he was in danger then? Well, I don't know that any facts or circumstances concerning his prior disciplinary history, his history of fighting with other inmates, the in-cell violence he had. It goes to the merits. It goes to the merits. As to what he could prove, why shouldn't he be given a chance to prove that the warden is acting with deliberate indifference now as to his safety, even if he couldn't prove that he was acting with deliberate indifference then? Because the facts, the circumstances, and the policy hasn't changed in all this time. And so I think it implies The fact that it hasn't changed or not is a matter of proof on which Mr. Foster bears a burden of proof. Why not give him a chance to prove that he's entitled to an injunction going forward? Well, what Hecht v. Humphrey Hecht v. Humphrey is good time credit. Okay. It says, now I've been able to find a tape-recorded interview with Mr. McDonald saying, we know that Foster's in terrible risk, but we're not going to do anything about it because we don't like Foster. If he had such a tape-recorded interview, why shouldn't he have a chance to prove it? What I believe Hecht v. Humphrey says is without regard to the relief that is requested, he lacks standing to bring a 1983 claim. His cause of action accrues after he proves that Defendant McDonald's conduct violated the Eighth Amendment. And on that matter, on the merits, there is absolutely zero evidence that he can prove that Defendant McDonald knew at the test in Farmer that he actually knew that his actions endangered Foster's safety. Are you saying that the affidavits and declarations filed did not raise a tribal issue of fact as to McDonald's deliberate indifference or knowledge? Yes. Because I think if you look at the record, not only did Defendant McDonald carefully examine the plaintiff's prior history at the hearing and concluded that it was safe to In other words, he believes he made the correct decision. And this all came about because the Department of Corrections changed its policy with regard to who would be single-celled. Previously, his history of individual fights with cell partners, and there is a dispute over whether that was one or two in his past, did place him on single-cell status. But the department changed its policy and requires a finding that the individual is either a physical or sexual predator or likely to be a victim of sexual or physical predation by a cell partner before they are disqualified. It's perfectly possible for an individual to have a disagreement with a cell partner that's a  And that would clarify him from the possibility of double-selling with the other, say, 125,000 male inmates in the Department of Corrections or the other, I don't know, hundreds of inmates who were in his housing unit at High Desert at the time. In your response brief, you assert qualified immunity. Was this issue presented to the district court in the framework of a summary judgment motion? I believe it was, Your Honor, but it has been quite some time ago, and I don't recall whether the magistrate judge addressed that issue. Well, I couldn't find it in the record. Okay. Well, indeed. I don't remember all of the issues. Indeed, if the defendants didn't raise the qualified immunity issue below, isn't that issue waived? It would be, Your Honor, at this point. As to the Eighth Amendment claim, I believe that Heck and Balasag in the whole line of cases and bar his claim, in other words, it doesn't arise until he establishes it through a habeas action. If he gets his credit restored, if he proves, as Mr. Foster contends, that it was a violation of his Eighth Amendment rights to remove him from single-cell status, then his credit would necessarily have to be restored to him. And there were, as I understand it, the consequences of him being on his continuous refusal to accept a cell partner had nothing to do with his mailing privileges. It might have prevented him from telephoning, and I think it would have limited the number of packages his family could send him during the year. I'm not sure whether much of this is in the record or not, but I do know the regulations of the Department would not place a limit on his being able to send correspondence, that even indigent inmates receive a certain amount of money for mailing each month. With regard to the property claim, there's a couple of things here. Mr. Foster specifically alleged in the complaint that the reason he was denied due process, because an invalid prison procedure was used to take his property. Therefore, that issue was litigated in the district court on the basis of Mr. Foster's claim. He's now completely changed his theory of the case and said, oh, no, it was an established accepted procedure. So the issue of whether or not he did in fact receive due process in some prison proceeding really wasn't briefed. But I think the record makes pretty clear that he did. For example, the record reflects that he was placed on his single cell status was removed on November 20th, 2003. There is a rule violation report for refusing a cell partner dated February 2nd, 2004, and one dated March 9th, 2004, and his property appliances were confiscated on March 9th, 2004. So he did receive disciplinary actions, and then he received a classification action May 25, 2004, where he was placed on the C-privileged status. And just one more additional, if in fact the property was taken pursuant to an established procedure, the defendants were acting solely as the agents of the State, because it is the State that confiscated his property. Thank you very much. Mr. Sullivan, do we have a minute for rebuttal? Yes, Your Honors. With only one minute, I would like to simply address the Balisock issue again. Now, defendants are — defendants counsel just argued that if Foster was to win an injunction restoring his single cell status, it would, quote, greatly imply that his good time credits were wrongfully revoked in the past. Greatly imply is not enough. The words of Balisock say relief must necessarily imply the invalidity of a loss of good time credits in order to be barred under 1984. Let me ask you another question. What evidence was there that created a tribal issue of fact that the warden knew about the danger to Foster or exhibited deliberate indifference at the time of the hearing in this record? Your Honor, I think the best evidence is that McDonald averted his affidavit that he carefully reviewed Foster's disciplinary history. And that disciplinary history showed that 11 different prison review boards, all with a different roster of prison officials at two different prisons, had unanimously, since 1999, kept Foster on single cell status. The evidence in Foster's disciplinary records also showed Foster suffered battery at the hands of another inmate. Not only that, but that this assault was so serious that the prison officials placed him in administrative segregation, effectively putting him into protective custody on the basis that his existence there was a threat to the safety of the institution. Given that McDonald acknowledged reviewing that disciplinary history, we respectfully submit that that alone creates a tribal issue of fact of whether he was aware of the danger to Foster. You want an injunction saying what? What do you want us to write and how do you want us to write? That Foster should be allowed to proceed to trial, with respect to his injunctive claims at least, that he can proceed to trial on whether he should get an injunction restoring his single cell status, meaning that he is duly recognized by the prison as being on single cell status and should not be subject to these continuing punishments. On the ground that the decision to take it away from him was wrong. On the ground that going forward it would create a serious risk of substantial harm to him and that the prison officials are aware of this risk. Based on the facts that were in the record at the time or is this a whole new thing? Are you saying there are new facts that have come to light since this record was perfected? The problem is it seems to me that it necessarily, if you want an injunction that orders that, that necessarily implies that the punishment that he was given was wrong. It does not necessarily. Because you're backward looking. You just told us that MacDonald knew or he should have known or he must have known because he reviewed all of this stuff. So what you're asking us to do is to order something that necessarily implies that the punishment was wrong. Simply as a matter of law, an injunction does not necessarily imply anything. How can you do both at the same time? I mean how can you get to where you want to go and still believe that the punishment was okay? Well, as we say, we do believe and that the reason Foster's damages claim is meritorious is we do believe there's a triable issue of whether MacDonald knew of the danger. However, even if MacDonald did not know of the danger back in 2003, it is certainly possible that he did know of the danger as of the date of the filing of Foster's lawsuit, which was substantially later. Certainly possible is not enough. You have to create a triable issue of fact by adducing and proffering objective evidence, which raises a triable issue of fact on a material point. Well, correct. And what is that? Well, MacDonald's, we referred to MacDonald's knowledge. Is MacDonald's review of the 11 prison boards is sufficient evidence to raise a triable issue of fact that Foster is a danger? Yes. Okay. In fact, it is. I see my time is more than up. Thank you, counsel. Thank you. All right. Thanks, counsel. A matter of Foster v. MacDonald will be submitted.
judges: Trott, Bea, Conlon